# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 2, 2002 Session Heard at Sevierville

## J. Y. SEPULVEDA v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Jefferson County**
**No. 15,954    Rex Henry Ogle, Judge**

---

**No.  E1999-02766-SC-R11-PC - Filed November 1, 2002**

---

In this post-conviction proceeding, the petitioner alleges that his pre-trial counsel failed to accompany him while he gave statements to the police and that trial counsel failed to offer the testimony of an expert pathologist.  These failures, the petitioner asserts, deprived him of the constitutionally-grounded right to the effective assistance of counsel.  Our review is guided by the United States Supreme Court's holding in Strickland v. Washington, which requires petitioners alleging ineffective assistance of counsel to prove that counsel's performance "fell below an objective standard of reasonableness" and that the petitioner was prejudiced by the deficient representation.  466 U.S. 668, 687-88, 694 (1984).  We readily conclude that pre-trial counsel's representation fell below reasonable standards.  Because we hold, however, that the petitioner has failed to prove he was prejudiced by the deficient pre-trial representation, the petitioner is not entitled to the relief sought.  As far as trial counsel's failure to offer the testimony of an expert pathologist is concerned, we hold that the petitioner failed to sufficiently articulate this claim in his post-conviction petition.  Thus, the trial court properly refused to hear evidence concerning that claim.  It results that the denial of post-conviction relief is affirmed.[1]

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Tim S. Moore, Newport, Tennessee, for the appellant, J. Y. Sepulveda.

---

[1]Oral argument was heard in this case on May 2, 2002, in Sevierville, Sevier County, Tennessee, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; and Angele M. Gregory, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts and Procedural History

The petitioner, J. Y. Sepulveda, filed this post-conviction petition alleging ineffective assistance of pre-trial and trial counsel in connection with his convictions arising from the death of his neighbor, Cora Nicholson. A brief recitation of the facts upon which this conviction rests is essential to place the issues in context.

On August 6, 1991, Nicholson was found lying on the floor of her home. She had suffered a severe beating. The ensuing on-scene police investigation soon focused on Sepulveda, and the officers asked him to accompany them to the police station for questioning. He was advised of his rights, and, before leaving the scene with the officers, he asked a family member to call a local attorney.

After arriving at the police station, Sepulveda was seated in the lobby awaiting the attorney's arrival.[2] After waiting for approximately two hours, he grew impatient, approached an officer, and asked to make a statement. At that time, he was again advised of his rights. He signed a waiver of those rights, and he gave a statement to the police in which he admitted that he and his brother-in-law, David Johnson, broke into Nicholson's home. Sepulveda insisted, however, that Johnson was the one who had attacked Nicholson.

After giving this statement, Sepulveda was arrested for the burglary. On September 9, 1991, he was indicted on charges of especially aggravated burglary, theft, and attempted first degree murder. Ed Miller, the Jefferson County Public Defender, was appointed to represent Sepulveda. Miller, who apparently believed Sepulveda might gain leniency by offering information about Johnson, advised Sepulveda that "he could best [help] himself by helping the state." With Miller's authorization, Sepulveda thereafter met with police on a number of occasions to make statements regarding the burglary. Miller, however, did not attend any of these meetings.

Nicholson died on October 27, 1991. Shortly thereafter, police contacted Miller and requested permission to administer a polygraph examination to Sepulveda; Miller granted permission. At the time, neither he nor Sepulveda was aware of Nicholson's death. On October 31, 1991, Sepulveda met with police for the polygraph examination; once again, his counsel was not with him. Upon his arrival, Sepulveda was advised of his rights and signed a waiver of those rights; he also signed a second waiver indicating that he wished to take the polygraph exam. Then, while police were advising him about the procedures for the polygraph, he spontaneously confessed to

_____

[2]It is unclear from the record whether Sepulveda's family ever actually contacted the attorney.

having initiated the attack. He then signed a written statement admitting that it was he, and not Johnson, who had beaten, kicked, and choked Nicholson.

Prior to trial, Miller was removed as Sepulveda's counsel, and new counsel was appointed by the trial court.[3] Sepulveda then moved to suppress all of the statements he had given to police. The trial court refused to exclude the statements, finding that they were not taken in violation of Sepulveda's constitutional rights. The court, however, stated:

> In all candor, the Court must say that he wished that Mr. Miller had inquired further of the facts and circumstances surrounding the investigation by the officers. He obviously has the right to rely upon what his client tells him. All of us who have ever represented people have that right, assuming it is reasonable.
>
> . . . I must say, however, and it pains this Court to have to say this, that an attorney should not send their client off unattended time after time, especially to a critical proceeding like a polygraph exam. I've [represented] cooperating defendants; all of us have. But I don't think that it rises to the level expected of us under the Sixth Amendment to send our clients off unattended for polygraph examinations. I just don't – I just don't think that's proper.

The case proceeded to trial, and Sepulveda was convicted of felony murder, especially aggravated burglary, and theft. He received a life sentence for the murder; he also received sentences of 10 years for the especially aggravated burglary and 11 months, 29 days for the theft. On direct appeal, the Court of Criminal Appeals affirmed the convictions, finding that the trial court properly refused to suppress the statements. The intermediate court declined to consider Sepulveda's claims of ineffective assistance of counsel, finding such claims premature.[4]

Subsequently, Sepulveda filed a petition for post-conviction relief in which he contended that he had not been effectively assisted by counsel. At the hearing on the petition, he asserted that his pre-trial counsel was deficient in failing to accompany him when he met with police to give his statements. He also asserted that his trial counsel was deficient in neglecting to call a pathologist to testify whether some other event, such as a stroke or brain hemorrhage, might have proximately caused Nicholson's death. The trial court heard evidence regarding the claim of ineffective assistance of pre-trial counsel, but it found that the claim of ineffective assistance of trial counsel had not been pleaded with sufficient particularity to allow it to go forward at the hearing. It did, however, allow Sepulveda to make an offer of proof regarding that claim. Sepulveda's post-conviction counsel made the following statement as an offer of proof:

---

[3]The transcript of the hearing at which Miller was removed is not included in the record on appeal.

[4]The Court of Criminal Appeals reduced the conviction of especially aggravated burglary to aggravated burglary. The sentence was also modified. See State v. Sepulveda, No. 03C01-9402-CR-00069, 1997 Tenn. Crim. App. LEXIS 598 (Tenn. Crim. App. June 26, 1997).

[T]he big thing I think looking back at it is a pathologist that could have testified. They knew . . . there would be inconsistencies in [the State medical expert's] testimony as to whether [a hemorrhage] would show up on a CAT scan and only a pathologist – And I think one of their medical experts testified to that, said well, I'm not a pathologist, I haven't done pathology in eighteen or twenty years and you need a pathologist for that.

At the conclusion of the hearing, the trial court found that Sepulveda's pre-trial counsel's actions in sending "his client off to take a polygraph exam without going with him" fell below the standard of effective representation required by the Sixth Amendment, but it further found that Sepulveda had not demonstrated that pre-trial counsel's deficient performance had prejudiced him. With regard to the actions of trial counsel, the trial court stated that the offer of proof regarding the pathologist went only to the weight of the testimony of the State's medical experts, and "there is no showing . . . that, even if it were offered that it was prejudicial. . . . [I]t went to the weight and I think the evidence in this case was very clear in the Court's mind that her cause of death was this severe beating." Consequently, Sepulveda's petition for post-conviction relief was dismissed.

Sepulveda appealed, and the Court of Criminal Appeals affirmed the judgment of the trial court. We granted permission to appeal, and we now hold that while the representation by Sepulveda's pre-trial counsel was deficient under the Sixth Amendment, Sepulveda was not prejudiced by this deficient performance. We further hold that Sepulveda failed to specify the particulars of the alleged deficient performance of trial counsel sufficiently so as to entitle him to a hearing on that claim. Accordingly, the denial of post-conviction relief is affirmed.

## II. Standard of Review

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the trial court's factual findings are entitled to substantial deference unless the evidence preponderates against those findings, and appellate courts do not substitute their own inferences for those drawn by the trial court. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Id. When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

## III. Analysis

In criminal prosecutions, the Sixth Amendment to the United States Constitution guarantees that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." Article I, section 9 of the Tennessee Constitution provides a corresponding guarantee, stating in pertinent part "that in all criminal prosecutions, the accused hath the right to be heard by himself and his

counsel." The right described in these constitutional provisions has been interpreted to "encompass[] the right to 'reasonably effective' assistance, that is, within the range of competence demanded of attorneys in criminal cases." State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). A defendant is not entitled to a remedy for the violation of this right, however, "unless the substandard performance of the attorney negatively affected the ultimate judgment." State v. Garrison, 40 S.W.3d 426, 429 (Tenn. 2000).

In Strickland v. Washington, the United States Supreme Court set forth the analytical framework by which claims of ineffective assistance of counsel are judged. 466 U.S. 668 (1984). In keeping with the constitutional principles outlined above, the Court established a two-pronged analysis, requiring the defendant to prove that: (1) counsel's representation was deficient because it "fell below an objective standard of reasonableness"; and (2) the defendant was prejudiced by the deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. It is the defendant's burden to establish both prongs of the test by clear and convincing evidence. Burns, 6 S.W.3d at 461; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

At the outset, we note that Sepulveda's claims essentially encompass challenges to three distinct "phases" of representation in this case: (1) during Sepulveda's August 6 statement, which was made prior to his being indicted on September 9, 1991; (2) during the statements made after indictment, but before trial, while he was being represented by Miller; and (3) during his trial. With regard to the first of these three phases, we must heed the United States Supreme Court's delineation of the scope of the Sixth Amendment right to counsel:

> The Sixth Amendment right . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (internal quotations omitted). Under this standard, no right to counsel had attached at the time of Sepulveda's August 6 statement, for that statement preceded his indictment on September 9, 1991. Accordingly, any claim of ineffective assistance of counsel in connection with that statement may be dismissed outright. We address below the remaining claims of: (1) ineffective assistance of pre-trial counsel after his indictment; and (2) ineffective assistance of trial counsel.

A. Pre-trial Counsel

We first must address Sepulveda's claim of ineffective assistance of counsel as to the statements he gave to the police after his indictment. Applying the two prongs of Strickland to

determine whether Sepulveda was deprived of the right to counsel, we first must determine whether counsel's performance was deficient. In making that determination, we note that both the original trial court and the post-conviction court agreed that the representation fell below what is required by the Sixth Amendment. The charges against Sepulveda were serious; he was relatively young and of somewhat limited intelligence. Despite these facts, counsel allowed Sepulveda to meet unsupervised with law enforcement on multiple occasions, even though counsel was aware that allowing a client to give multiple statements to police could seriously jeopardize the client's interests. Moreover, counsel's investigation of the case appears to have been lacking. Had he monitored the case more closely, he may have been aware of Nicholson's death–and the resultant increase in the seriousness of the case–prior to Sepulveda's polygraph examination. Under the circumstances, we have little difficulty in concluding that the representation offered by Sepulveda's pre-trial counsel failed to meet the objective standard of reasonableness required by the Sixth Amendment.

Having found that pre-trial counsel's performance was deficient, we next must determine whether Sepulveda was prejudiced by that deficient performance. Sepulveda contends that prejudice should be presumed because of the State's failure to inform him either that Nicholson had died or that the police considered him to be the principal target of the investigation. In Strickland, the Supreme Court stated that prejudice may be presumed in instances of "state interference with counsel's assistance." 466 U.S. at 692. In this case, however, the State did not actively interfere with counsel's ability to represent Sepulveda; it merely declined to inform counsel of Nicholson's death or of the nature of its investigation. Sepulveda has not demonstrated that counsel would have been unable to discover Nicholson's death through independent investigation, had he monitored the case more closely. Thus, we are not persuaded that the State was required to bear the burden of notifying Sepulveda's counsel of this occurrence. Likewise, with regard to Sepulveda's being the target of the State's investigation, we observe that Sepulveda faced serious charges and had already made statements implicating himself in the burglary of Nicholson's house. Under the circumstances, it was perilous, at best, for his attorney to assume he would *not* be a primary target of the State's investigation, and we decline to hold that the State was constitutionally required to actively disclose the status of that investigation. Accordingly, we hold that prejudice should not be presumed in this case.

Because prejudice cannot be presumed from the circumstances before us, Sepulveda must demonstrate by clear and convincing evidence a reasonable probability that the result of his trial would have been different if his attorney had not allowed him to give statements to police without supervision. At the outset, the State points out the difficulty in proving prejudice due to the lack of certainty that counsel's presence would have prevented Sepulveda from making statements to police – particularly his final admission to beating Nicholson. We need not address this difficult question, however, for even if we assume, *arguendo*, that he would not have given the statements, we nonetheless conclude that Sepulveda has failed to show prejudice. Sepulveda was convicted of felony murder, which, for the purposes of this case, requires proof only that he participated in the "killing of another committed in the perpetration of or attempt to perpetrate . . . burglary [or] theft."

Tenn. Code Ann. § 39-13-202(2) (1997).[5] Thus, the State was not required to prove that Sepulveda actually killed Nicholson:

> The . . . offense extends both to the killer and his accomplices. A defendant who is a willing and active participant in a [felony] becomes accountable for all of the consequences flowing from the felony and may be convicted of first-degree murder where a co-perpetrator of the felony is the actual killer.

State v. Middlebrooks, 840 S.W.2d 317, 336 (Tenn. 1992); see also State v. Brown, 756 S.W.2d 700, 703 (Tenn. Crim. App. 1988).

In Sepulveda's August 6 statement, he voluntarily admitted that he actively participated in the burglary of Nicholson's home, even though he claimed at that time that Johnson was the one who attacked Nicholson. Though Sepulveda emphasizes that his October 31 admission that he was the attacker was more incriminating than the prior statement, the August 6 statement, standing alone, was plainly sufficient to convince a jury that Sepulveda was guilty of felony murder. Consequently, we conclude that Sepulveda has failed to prove a reasonable probability that the result of his trial would have been different but for his pre-trial counsel's ineffective representation. We hold, therefore, that Sepulveda has failed to satisfy the second prong of the Strickland test, and we reject his claim of ineffective assistance of pre-trial counsel.

### B. Trial Counsel

Sepulveda also contends that he should have been allowed to present evidence regarding his trial counsel's failure to offer expert testimony of a pathologist at trial. The pleading requirements for post-conviction petitions are set forth in detail at Tenn. Code Ann. § 40-30-206(d) (1997). In pertinent part, that provision states:

> The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. Failure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition.

Id. The grounds listed in the petition filed by Sepulveda[6] provide only that:
> Edward Miller was ineffective in his representation of the petitioner at all stages of his pretrial [case], including, but not limited to, when the petitioner was arraigned

---

[5]Felony murder also applies in cases involving a killing in connection with a first degree murder, arson, rape, robbery, kidnapping, aggravated child abuse, or aircraft piracy. Id.

[6]Sepulveda filed the petition pro se. His post-conviction counsel, however, had the opportunity to amend the petition and did not do so. Cf. Tenn. Code Ann. § 40-30-206(e) (noting that counsel "may file an amended petition within thirty (30) days of appointment").

and all other stages of his pre-trial representation of the petitioner in violation of the United States Constitution, Amendment 6, and in violation of Article I, sections 8 & 9 of the Constitution of the State of Tennessee. Specifically, counsel's performance is [insufficient], constituting ineffective assistance.

All of the supporting facts recited in the petition pertain directly to Miller's pre-trial representation. The petition makes no mention whatsoever of trial counsel. Although Sepulveda claims that a "liberal construction of the original post-conviction petition would certainly have allowed this issue to have been discussed," he points to no language in the petition that would satisfy the statutory requirement of a "clear and specific statement" alleging ineffective assistance of trial counsel. To the contrary, the petition plainly concerns itself only with whether Miller's representation was ineffective. Consequently, we conclude that the trial court properly declined to hear evidence regarding the performance of trial counsel.

## IV. Conclusion

For the foregoing reasons, we hold that Sepulveda has failed to prove his claims of ineffective assistance of counsel. Accordingly, we affirm the opinion of the Court of Criminal Appeals, and Sepulveda's petition for post-conviction relief is dismissed. As it appears Sepulveda is indigent, costs on appeal are taxed to the State, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE